COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CHRISTOPHER BUCHANAN, | § | No. 08-06-00203-CR |
| Appellant, | § | Appeal from the |
| v. | § | 168th Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 20050D01234) |
| | § | |

**O P I N I O N**

Christopher Buchanan appeals his conviction for murder. A jury found him guilty and assessed punishment of 28 years' confinement. On appeal, Appellant asserts in a single issue containing four parts that the evidence is insufficient as a matter of law to sustain his conviction for murder. We affirm the trial court's decision.

In the afternoon of February 9, 2005, Lisa Finley invited some friends to her house in Northeast El Paso, Texas. Appellant Chris Buchanan, Terrance Ferrar, and Heather Ayon were among the people invited. Appellant arrived with a bottle of E & J brandy for everyone to drink. After everyone finished the bottle of E & J, Ms. Finley, Ms. Ayon, Mr. Ferrar, and Appellant decided to go to a bar. First, they went to a bar called Sisters. After Sisters, they went to a club called Bangkok and had more drinks. As Bangkok was closing, Ms. Finley, Ms. Ayon, and Appellant left and got into Ms. Ayon's car. Mr. Ferrar exited the bar a few moments later and approached the side of the car where Appellant was sitting. He told Appellant that someone was inside "talking shit."

Appellant got out of the car and went back inside the bar with Mr. Ferrar. They came back to the car a short time later; Mr. Ferrar was angry and cursing. Appellant suggested that the two of them should find someone to beat up. As they drove away from the club, Mr. Ferrar told Ms. Ayon to pull over; he got out of the car and started to chase a stranger. The stranger got away, but a short time later they found a homeless man walking through a restaurant parking lot on Dyer Street. Mr. Ferrar and Appellant attacked the man, later identified as Mr. Roud. Appellant struck Mr. Roud at least three times in his cheek, while Mr. Ferrar kicked and punched him. The men ignored Mr. Roud's pleas to stop. At one point, Appellant and Mr. Ferrar began stomping Mr. Roud's head, back, and body while he was down on the asphalt. Mr. Roud lost consciousness and later died at a hospital.

The sole issue presented to the Court is whether the evidence presented at trial was legally sufficient to sustain his conviction for murder. This issue contains four parts regarding the legal theories included in the court's charge to the jury. Specifically, Appellant contends: (1) that the jury improperly convicted him under the felony-murder doctrine in violation of the merger doctrine as embodied in *Garret v. State*, 573 S.W.2d 543, 545 (Tex.Crim.App. 1978); (2) that the evidence is legally insufficient to establish a specific intent to kill; (3) that the evidence is insufficient to support a finding that Appellant assisted, promoted, or encouraged his codefendant, Terrance Ferrar to commit an act clearly dangerous to human life; and (4) that there is no proof of any agreement or overt act by Appellant in furtherance of an alleged conspiracy to commit an assault.

In part one of Appellant's sole issue, he asserts that the State and trial court employed the felony- murder doctrine. The State argues to the contrary that the jury was never charged on the

felony-murder doctrine, but rather the charge tracked the doctrine of transferred intent under

Section 6.04(b) of the Texas Penal Code, which provides in pertinent part:

> A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:
>
> (1)     a different offense was committed . . . .

TEX.PENAL CODE ANN. § 6.04(b)(1)(Vernon 2003).

Pursuant to the Texas Penal Code, Section 19.02(b)(3), a person is guilty of felony-murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(b)(3)(Vernon 2003). There is no such language in the trial court's jury instructions. The trial court merely charged the jury on the theories of individual liability, party liability, conspiracy to commit murder, and transferred intent, under which, if all the elements were proved beyond a reasonable doubt for any one of these theories, the jury could find the Appellant guilty for murder. *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex.Crim.App. 1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 731 (1993). We overrule the first part of Appellant's issue.

Parts two, three, and four challenge the legal sufficiency of the evidence in support of Appellant's conviction. In a legal sufficiency review, we must consider all of the evidence in a light most favorable to the verdict, and determine whether a reasonable minded juror could have found the essential elements were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13

(Tex.Crim.App. 2007). We must give deference to, "'the responsibility of the trier of fact to fairly resolve all conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13.

When a jury returns a general verdict and the evidence is sufficient to support a guilty finding under any of the allegations submitted, the verdict will be upheld. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003). Thus, we apply the legal sufficiency standard of review to each theory submitted to the jury in the court's charge. *Rabbani*, 847 S.W.2d at 558. Sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). This hypothetical charge accurately setting out the law, authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*.

In part two of Appellant's issue, he urges that the evidence presented at trial is legally insufficient to establish a specific intent to kill. A person commits murder if (1) he intends to cause serious bodily injury, and (2) commits an act clearly dangerous to human life, that (3) causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(b)(2). Intent to kill is not required to commit murder under Section 19.02(b)(2). *Ramirez v. State*, 229 S.W.3d 725, 729 (Tex.App.--San Antonio 2007, no pet.). Rather, there must be an intent to cause serious bodily injury to the individual whose death results from an act clearly dangerous to human life. *Ramirez*, 229 S.W.3d at 729. Serious bodily injury is bodily injury that creates a substantial risk of death, or that causes death, serious permanent disfigurement, or protracted loss or impairment

-4-

of the function of any bodily member or organ. *Id*. at 728. An act clearly dangerous to human life is one that creates a substantial risk of death. *Depauw v. State*, 658 S.W.2d 628, 634 (Tex.App.--Amarillo 1983, pet. ref'd). The test for determining whether an act is clearly dangerous to human life is an objective one. *Lugo-Lugo v. State*, 650 S.W.2d 72, 81 (Tex.Crim.App. 1983). We thus do not consider whether the defendant subjectively knew that his acts were clearly dangerous to human life; rather, we focus on whether the acts themselves were clearly dangerous to human life. *Rogers v. State*, No. 05-92-00507-CR, 1994 WL 121055, at *3 (Tex.App.--Dallas Apr. 4, 1994, no pet.)(not designated for publication). To be clearly dangerous to human life, the act committed need only threaten or risk a resulting death. *Lugo-Lugo*, 650 S.W.2d at 88.

We are persuaded that the evidence was sufficient to allow the jury to find that Appellant committed an act clearly dangerous to human life. The record reflects that he told Ms. Ayon to stop the car so that he and Mr. Ferrar could attack Mr. Roud, and he punched and kicked Mr. Roud. Without question, Appellant made a conscious decision to cause serious bodily injury. Moreover, corroborating forensic pathologist evidence reflected that Mr. Roud suffered severe multiple blunt force trauma injuries to the head. The most common cause of a brain injury is trauma, a violent movement of the brain inside the skull. Instances that can cause such trauma include being struck on or about the head with an object, such as a hard object, or a foot, fist, or hitting the head against a hard object or surface. The forensic expert further testified that the punches and kicks Mr. Roud received to the head and body from Appellant were forceful enough to cause serious bodily injury and death. The blunt force Mr. Roud suffered to the head caused severe damage to the part of his brain that controlled his breathing and other vital functions,

causing him to become comatose and ultimately die.

Given the evidence of Mr. Roud's injuries, we conclude that a rational trier of fact could have concluded that Appellant intended and did cause serious bodily injury to Mr. Roud and was therefore, guilty of committing an act clearly dangerous to human life resulting in death. Thus, part two of Appellant's sole issue is overruled.

Having considered all the evidence in a light most favorable to the verdict, and determining whether a reasonable minded juror could have found the essential elements were proven beyond a reasonable doubt, we hold that the jury could have convicted Appellant for murder based on the jury charge of committing an act clearly dangerous to human life that results in death. Because the jury returned a general guilty verdict for murder, there is no need to address the other theories of which the jury could have convicted Appellant for murder. *Rabbani*, 847 S.W.2d at 558. We therefore overrule Issue One.

We affirm the trial court's judgment.

August 14, 2008

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., Not Participating

(Do Not Publish)

-6-