**Affirmed and Opinion filed February 15, 2024.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-23-00126-CR

---

### JONATHAN NGUYEN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1741275**

---

## OPINION

Appellant raises multiple issues in this appeal from his conviction for murder. For the reasons given below, we overrule each of his issues and affirm the trial court's judgment.

## I.  BACKGROUND

Appellant was charged on a theory of felony murder. The indictment alleged that he killed the complainant by committing an act clearly dangerous to human life

while in the course of committing an unauthorized use of a motor vehicle. Appellant pleaded not guilty to that charge, and his case proceeded to a trial by jury.

The evidence established that the complainant was a tow truck driver, and that appellant stole the complainant's tow truck as the complainant was removing certain personal items from a vehicle that had recently been repossessed. When the complainant realized that appellant had stolen the tow truck, the complainant gave chase in the repossessed vehicle. The complainant eventually caught up to the tow truck at a traffic light, where he angled the repossessed vehicle in front of the tow truck, attempting to block appellant's path forward. The complainant then got out of the repossessed vehicle and approached the tow truck, which is when appellant moved forward, pinned the complainant between the two vehicles, and ultimately ran the complainant over. The complainant succumbed to his injuries.

Testifying in his own defense, appellant admitted that he stole the complainant's tow truck, but he denied that he was guilty of felony murder. He explained that, at the time of the incident, he had been awake for a week—high on methamphetamine—and that he did not see the complainant when he maneuvered himself around the repossessed vehicle.

The jury rejected appellant's defensive theory and convicted him as charged.

## II.    SUFFICIENCY OF THE EVIDENCE

We begin with appellant's sufficiency challenge, even though it was not presented first in his brief, because if meritorious, it would afford him the greatest amount of relief. *See Roberson v. State*, 810 S.W.2d 224, 225 (Tex. Crim. App. 1991) (per curiam) (indicating that rendition points should be addressed before remand points).

In a sufficiency challenge, a reviewing court must determine whether a rational trier of fact could have found the essential elements of an offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The offense here was felony murder, which has two essential elements: (1) the defendant committed or attempted to commit a felony, other than manslaughter; and (2) in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, the defendant committed or attempted to commit an act clearly dangerous to human life that caused the death of an individual. *See* Tex. Penal Code § 19.02(b)(3).

For the first element, the prosecution alleged that appellant committed an unauthorized use of a motor vehicle. Appellant admitted as much in his own testimony, which means that the evidence is sufficient to support that element.

For the second element, the prosecution alleged that in the course or flight of that unauthorized use of a motor vehicle, appellant committed an act clearly dangerous to human life through one or more means—(1) by failing to keep a proper lookout, (2) by failing to control his speed, or (3) by causing the tow truck to strike the complainant—and appellant thereby caused the death of the complainant.

Appellant argues that the first two of these means are omissions, and therefore, not "acts" clearly dangerous to human life. We need not consider that argument, because there is ample evidence regarding the third means that he caused the tow truck to strike the complainant, which is unmistakably an act.

The evidence of this third means came largely from a car lot technician, who joined the complainant in his pursuit of the tow truck. The technician testified that when appellant was stopped at the traffic light, the complainant pulled in front of appellant and stepped outside. The technician then said that appellant proceeded to drive the tow truck forward, until appellant had pinned the complainant between the

3

tow truck and the repossessed vehicle. The technician also testified that he saw appellant drive the tow truck over the complainant. This evidence was sufficient to show that appellant had committed an act clearly dangerous to human life.

There was also testimony that this act caused the death of the complainant. After the tow truck ran over him, the complainant was bleeding from his eyes and ears. He was transported to the hospital and pronounced dead that same day. A medical examiner testified that the complainant died from blunt force trauma to the head and torso with multiple bone fractures, and that these injuries were consistent with being struck and run over by a tow truck.

Appellant suggests that the evidence is insufficient because he testified that he never saw the complainant. But the prosecution was not required to prove that appellant was aware of the complainant's presence. *See Lomax v. State*, 233 S.W.3d 302, 305 (Tex. Crim. App. 2007) ("We hold that Section 19.02(b)(3) plainly dispenses with a culpable mental state."); *Garrett v. State*, 573 S.W.2d 543, 545 (Tex. Crim. App. 1978) ("The felony murder rule dispenses with any inquiry into the mens rea accompanying the homicide itself."). And in any event, the jury was not obliged to credit appellant's self-serving testimony. There was photographic evidence, predating the incident, of the complainant standing next to his tow truck. From that evidence, the jury could have reasonably inferred, based on the complainant's height, that he would have been visible to any driver within the tow truck.

Relatedly, appellant argues that he cannot be held criminally responsible for murder because the complainant independently caused his own death when he jumped in front of the tow truck.

The jury was charged on the law of concurrent causation, which provides that "a person is criminally responsible if the result would not have occurred but for his

4

conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *See* Tex. Penal Code § 6.04(a). Stated another way, when concurrent causes are present, the defendant may be criminally responsible if (1) the defendant's conduct was sufficient by itself to have caused the harm; or (2) the defendant's conduct and the other cause together were sufficient to have caused the harm. *See Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). But a defendant cannot be criminally responsible if the other cause was clearly sufficient by itself to produce the result, and the defendant's conduct by itself was clearly insufficient. *Id.*

Here, the jury could have reasonably concluded that the complainant's decision to step in front of the tow truck was insufficient by itself to cause his own death. There was evidence that appellant had already come to a stop in the tow truck, and as long as he remained at a stop, the jury could have reasonably determined that he had not committed any act clearly dangerous to human life. However, there was additional evidence that after the complainant had stepped in front of the tow truck, appellant drove the tow truck forward, struck the complainant, and then ran the complainant over, which were actions clearly dangerous to human life. From this evidence, the jury could have reasonably concluded that appellant's actions were at least a concurrent cause, and that the complainant would not have died but for appellant striking him with the tow truck and running him over.

For all of these reasons, we conclude that the evidence is legally sufficient to support every essential element of the offense beyond a reasonable doubt.

### III.   EXTRANEOUS OFFENSE EVIDENCE

Shortly before the trial began, the trial court considered a motion in limine, in which the defense sought to exclude certain evidence of extraneous offenses. These

offenses concerned appellant's failure to stop after colliding with another motorist, as well as his evasion from police. The prosecution responded that these extraneous offenses occurred immediately after the felony murder of the complainant, and thus, that they were admissible as same transaction contextual evidence. The trial court agreed that the evidence was admissible for being part of the same transaction. The trial court also granted the defense a running objection to the prosecution's presentation of the challenged evidence.

Appellant now challenges the trial court's ruling in two separate issues. First, he argues that the evidence was inadmissible under Rule 404 of the Texas Rules of Evidence. And second, he argues that even if the evidence were not inadmissible under Rule 404, it should still have been excluded under Rule 403 of the Texas Rules of Evidence because its probative value did not outweigh its prejudicial effect. We examine both arguments in turn.

## A.    Rule 404

Evidence of an extraneous offense is not admissible if the purpose of the evidence is to show that a person has a character trait and that the person acted in conformity with that character trait on a particular occasion. *See* Tex. R. Evid. 404(a). But under an exception to this rule, such evidence may be admissible if it advances "another purpose." *See* Tex. R. Evid. 404(b).

Several alternative purposes are specifically set forth under Rule 404, including "absence of mistake" and "lack of accident." *See* Tex. R. Evid. 404(b). Another purpose has been recognized by the courts: to provide "same transaction contextual evidence." *See Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991). This sort of contextual evidence refers to those background situations where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether

6

direct or circumstantial, of any one of them cannot be given without showing the others." *Id.* at 86 n.4. This evidence is deemed admissible because "events do not occur in a vacuum and . . . the jury has a right to hear what occurred immediately prior to and subsequent to the commission of the act so that they may realistically evaluate the evidence." *Id.* at 86. Yet, such evidence must still be "necessary to the jury's understanding of the offense" such that the charged offense would make little sense without the same transaction evidence. *See Inthalangsy v. State*, 634 S.W.3d 749, 756 (Tex. Crim. App. 2021).

Appellant contends that the evidence of any extraneous offenses was not "necessary" to the jury's understanding of the charged offense, which, if true, would mean that the trial court abused its discretion by admitting the evidence as same transaction contextual evidence. We need not determine whether that argument is meritorious, because even if the prosecution, as the proponent of the evidence, did not strictly meet all of the requirements for same transaction contextual evidence, the trial court could have still concluded that the evidence was admissible for another purpose, like "lack of accident." *See* Tex. R. Evid. 404(b).

During opening statements, defense counsel asserted that appellant did not commit a felony murder; rather, counsel asserted that this case was simply a "tragic accident." Counsel also asserted that appellant never caused his vehicle to strike the complainant. The evidence of appellant's extraneous flight and evasion undercut these arguments. *See Alba v. State*, 905 S.W.2d 581, 586 (Tex. Crim. App. 1995) ("Flight is admissible as a circumstance from which an inference of guilt may be drawn."). On that basis alone, the trial court would not have abused its discretion by overruling appellant's objection under Rule 404. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002) ("The appellate court must uphold the trial court's

ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.").

## B.    Rule 403

Even when evidence is relevant, a trial court may exclude it if its probative value is substantially outweighed by a danger of unfair prejudice. *See* Tex. R. Evid. 403.

When undertaking a Rule 403 analysis, the trial court must balance (1) the inherent probative force of the proffered item of evidence with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

The prosecution did not explain its need for the challenged evidence during the hearing on the motion in limine, but during closing statements, the prosecution argued that the evidence of flight and evasion was probative of appellant's intent. Now on appeal, appellant asserts that the prosecution did not need to prove his intent because he admitted to committing the predicate felony of unauthorized use of a motor vehicle. Appellant further asserts that there was no need to prove his intent with regard to the remaining element of the charged offense because, as mentioned above, "the felony murder rule dispenses with any inquiry into the mens rea accompanying the homicide itself." *See Garrett v. State*, 573 S.W.2d 543, 545 (Tex. Crim. App. 1978).

Appellant overlooks that his admission occurred after the prosecution had already presented its evidence, and that the prosecution had to present that evidence first because it had the burden of proof. Thus, even if the prosecution had no need to prove appellant's intent regarding the murder, there was still a need to prove his mental state regarding the predicate felony, and the trial court could have reasonably determined that the extraneous evidence of flight and evasion was probative of that intent.

The trial court could have likewise determined that the danger of unfair prejudice was low. During the hearing on the motion in limine, the prosecution asserted that the flight and evasion occurred immediately after the felony murder. Accordingly, the trial court could have reasonably concluded that the extraneous flight and evasion would not have distracted the jury from the main issues in the case.

The trial court could have also determined that the challenged evidence was unlikely to affect the jury in an unfair or irrational way, as there is nothing typically inflammatory or emotional about a flight or evasion.

Appellant asserts that the prosecution spent an inordinate amount of time on the challenged evidence. He also emphasizes that the trial court admonished the prosecution to refocus the testimony on the charged offense. Even if this factor weighed in favor of exclusion, there was no indication at the time that the trial court agreed to admit the evidence that the prosecution would spend so much time developing it. And considering all of the factors together, we cannot say that the trial court abused its discretion by ruling that the evidence was admissible.

## C.    No Harm

Even if we were to assume for the sake of argument that the trial court erred by admitting the challenged evidence, any such error would be reviewed under the standard for nonconstitutional error, and under that standard, we would conclude that the error was harmless. *See Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011) (observing that the erroneous admission of extraneous offense evidence is reviewed for harm under the standard for nonconstitutional error).

Nonconstitutional error must be disregarded unless it affects a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no influence or only a slight effect on the verdict, then the error is harmless. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

When assessing harm, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We also consider the jury instructions given by the trial court, the theories from the prosecution and the defense, closing arguments, and even voir dire, if material to the defendant's claim. *Id.*

We first note that there was overwhelming evidence in support of the verdict. As explained elsewhere in this opinion, appellant admitted to committing the predicate felony of unauthorized use of a motor vehicle, and there was direct testimony from the technician that appellant pinned the complainant between two vehicles and then proceeded to drive over him, thereby causing the complainant's

10

death. This evidence was strong enough by itself to warrant a conviction for felony murder.

We also note that the prosecution only briefly referenced the challenged evidence during closing statements, and that the trial court had further charged the jury with a limiting instruction about the extraneous offenses.

Based on the record as a whole, we conclude that the extraneous flight and evasion were unlikely to move the jury from a state of non-persuasion to a state of persuasion. Because the challenged evidence had at most a slight effect on the jury's verdict, we further conclude that any error in its admission was harmless. *See Prior v. State*, 647 S.W.2d 956, 960 (Tex. Crim. App. 1983) (holding that the erroneous admission of extraneous offense evidence was harmless where the evidence of guilt was overwhelming and where the jury had received a limiting instruction).

## IV. CHARGE COMPLAINT

The application paragraph of the jury charge stated as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th day of July, 2018, in Harris County, Texas, the defendant, JONATHAN NGUYEN, did then and there unlawfully, intentionally or knowingly commit the felony offense of Unauthorized Use of a Motor Vehicle by intentionally and knowingly operating a motor propelled vehicle, namely an automobile, owned by [the complainant], without the effect[ive] consent of [the complainant], and while in the course of and furtherance of the commission of and the immediate flight from the commission of said offense did commit an act clearly dangerous to human life, to-wit: failing to keep a proper lookout, failing to control speed, causing his vehicle to strike [the complainant] and did thereby cause the death of [the complainant], then you will find the defendant guilty as charged in the indictment.

During the charge conference, appellant did not object to this paragraph (or to any other part of the charge), but he now contends that the trial court erred by giving it.

We review a complaint of charge error under a two-step process, considering first whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error does exist, we then analyze that error for harm under the procedural framework of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

Appellant complains of several alleged errors arising out of the application paragraph. He focuses primarily on the three descriptive phrases following "to-wit" —i.e., the allegations that he failed to keep a proper lookout, failed to control his speed, and caused his vehicle to strike the complainant. In his view, the application paragraph is erroneous because it treats these acts and omissions as "ipso facto clearly dangerous to human life," and therefore deprives the jury of making its own independent finding that they are clearly dangerous to human life. Relatedly, appellant argues that the application paragraph does not require the jury to make its own finding as to whether any act caused the death of the complainant. Altogether, appellant argues that the application paragraph "improperly combines separate elements," "reduce[s] the burden of proof and comment[s] on the weight of the evidence," and "fails to distinctly set forth the law applicable to the case."

Appellant's entire argument rests on *Fraser v. State*, 593 S.W.3d 883 (Tex. App.—Amarillo 2019, pet. ref'd). That case also involved a complaint of charge error, but the complaint there was different. It focused on the omission of certain phrases from the statutory definition of "reckless," which the court of appeals determined to be erroneous. *Id.* at 890. In the course of conducting its harm analysis, the court made other observations regarding the charge, which appellant now highlights in this case. *Id.* at 891–92. Those observations centered on a portion of

12

the application paragraph for felony murder, which alleged that the defendant "did then an there commit or attempt to commit an act clearly dangerous to human life, *namely*, by administering diphenhydramine to [the victim] and/or causing [the victim] to ingest diphenhydramine."

Based on that language, the court opined that the charge had "comment[ed] on the weight of the evidence by combining two essential facts"—a finding that the defendant had committed some act with a finding that the act was clearly dangerous to human life. *Id.* at 891. The court also opined that the charge had "grammatically stated that these particular acts are *ipso facto* clearly dangerous to human life," and therefore deprived the jury of making an independent finding that the acts were clearly dangerous to human life. *Id.* at 892. The court did not cite to any authority for these opinions of error—which was unassigned—and for at least two reasons, we are not confident that the opinions are correct.

First, that case had previously been reviewed by the Court of Criminal Appeals, which remanded the case back to the court of appeals to consider the charge error complaint surrounding the definition of "reckless." *See Fraser v. State*, 583 S.W.3d 564, 571 n.41 (Tex. Crim. App. 2019). The Court of Criminal Appeals did not signal the possibility of any unassigned error that should also be considered.

Second, we do not agree with the court of appeals that a charge improperly declares an act to be clearly dangerous to human life simply by describing the manner in which the act was alleged to have been committed. Indeed, the Texas

Criminal Pattern Jury Charges recommend that application paragraphs follow that very model.[1]

Contrary to appellant's suggestions, the charge here did not declare in sweeping terms that causing a vehicle to strike another person is per se an act clearly dangerous to human life. Rather, the charge tasked the jury with finding, under the particular facts of this case, if appellant had committed an act clearly dangerous to human life by causing the tow truck to strike the complainant. If the facts had been different—for instance, if the evidence had established that appellant struck the complainant with the tow truck, but the strike was at a very low speed and had stopped short of pinning the complainant against another vehicle—then a jury might very well have concluded that appellant had not committed an act clearly dangerous to human life. But those were not the facts, and under the evidence and charge as given, the jury was free to make an independent finding that appellant had committed an act clearly dangerous to human life.

We likewise conclude that the charge did not deprive the jury of making an independent finding as to whether this act had caused the death of the complainant.

---

[1] We reproduce the model instruction here:

You must determine whether the state has proved, beyond a reasonable doubt, three elements. The elements are that—

1. the defendant, in [*county*] County, Texas, on or about [*date*], committed or attempted to commit [*insert specific felony, e.g.*, injury to a child by intentionally, knowingly, or recklessly causing bodily injury] [*insert specific allegations, e.g.*, by hitting [*name*], a child fourteen years old or younger, with a blunt object]; and

2. in the course of and in furtherance of the commission or attempt or in immediate flight from the commission or attempt of [*insert specific felony, e.g.*, injury to a child], the defendant committed or attempted to commit an act clearly dangerous to human life [*insert specific act, e.g.*, by hitting [*name*] with a blunt object]; and

3. the act clearly dangerous to human life caused the death of [*name*].

Texas Criminal Pattern Jury Charges: Crimes Against Persons & Property § 80.4, at 12 (2020).

The charge only permitted the jury to return a verdict of guilty "if" it found that appellant had committed the predicate felony of unauthorized use of a motor vehicle; "if" it found that in the course of committing that felony, appellant also committed an act clearly dangerous to human life, by one of three described allegations; and "if" it further found that appellant "did thereby"—i.e., by reason of that aforementioned allegation—cause the death of the complainant.

We discern no error in how the charge described the allegations in which appellant may have committed an clearly dangerous to human life, or how the charge tasked the jury with deciding whether such act caused the death of the complainant, and we reject appellant's arguments to the contrary.

## V.   SUPPLEMENTAL INSTRUCTION

Appellant's next issue is also related to the jury charge. As mentioned in the previous section, the charge contained three allegations in which appellant was accused of having committed an act clearly dangerous to life. Those allegations were as follows: "failing to keep a proper lookout, failing to control speed, causing his vehicle to strike [the complainant]."

During deliberations, the jury returned a note concerning these allegations. The note stated as follows:

> We would like clarification on Page 2. Third paragraph ending. On the means for an act clearly dangerous to human life. Is it failure to keep lookout, failure to control speed AND causing his vehicle to strike [the complainant] or only one of the three. Thanks.

The trial court proposed a supplemental instruction stating that the prosecution need only prove one of the three allegations, and that the jury need not be unanimous as to which had been proven.

15

Appellant objected to the proposed instruction on the grounds that it improperly commented on the weight of the evidence, and that it "changed" the jury charge. Appellant proposed that the trial court respond to the jury with a note saying, "Refer to the charge and continue your deliberations."

The trial court overruled the objection. The trial court explained that manner and means allegations may be pleaded conjunctively but submitted disjunctively, and "we just failed to clear that up in the jury charge and the jury hit it right on the head." The trial court accordingly submitted the following supplemental instruction:

> The State must prove beyond a reasonable doubt either failure to keep proper lookout, or failure to control speed, or causing his vehicle to strike [the complainant]. The jury does not have to be unanimous as to which, if any, of the three "manner and means" may apply.

Appellant now challenges this supplemental instruction on appeal, but the scope of his challenge is limited. He does not argue that the instruction was legally incorrect as to the question of whether the prosecution had to prove all three allegations or just one of them. Nor does he argue that the instruction was legally incorrect on the question of unanimity. Rather, in points reminiscent of his jury charge complaints, appellant argues that the instruction was erroneous because it relieved the prosecution of the burden of proving that the allegations were acts clearly dangerous to human life, and that the commission of any such act caused the death of the complainant.

Once again, we perceive no such error. The instruction did not dispense with the prosecution's burden of proving that an allegation was an "act clearly dangerous to human life"—the instruction did not even include such language. Nor did the instruction dispense with the prosecution's burden of proving the causation element, on which the instruction was also silent. Instead, the instruction simply separated the three manner and means allegations with the disjunctive word "or," which had been

16

omitted from the original charge. The instruction was proper. *See Munoz v. State*, 533 S.W.3d 448, 457–58 (Tex. App.—San Antonio 2017, pet. ref'd) (concluding that there was no charge error in a felony-murder case where the manner and means of committing the dangerous acts were given disjunctively).

## VI.   VOIR DIRE

In his final two issues, appellant argues that the trial court made two comments during voir dire that vitiated the presumption of innocence.

One of the challenged comments occurred near the very beginning of voir dire. We reproduce the trial court's full statements here:

> Somebody saw the Harris County Criminal Justice Court sign downstairs on the way over here. They walked into this court thinking, I wonder what this guy did. It's human nature to walk into this court and be thinking to yourself, I wonder what this guy did. I'm going to ask you to do something for me. Take that human nature and park it somewhere else. Because in this state and in this nation, if you are charged with a criminal offense, as Mr. Nguyen is today, you are simply presumed to be innocent unless or until proven otherwise in the course of the trial.
>
> So I get the human nature, I wonder what he did, how did he get down here. Makes sense to me. Park it somewhere else. And keep in mind the person on trial is simply presumed innocent unless and until proven guilty in the course of the trial. There are no ifs, ands, or buts that follow that sentence. It applies both in state court and federal court, a presumption of innocence.
>
> You know, we watched the bombing of the Boston Marathon a couple years ago. And a guy was on videotape doing it. And we had to find jurors who said: Okay. I know what your position is, but I can give that young man, whoever it was, a presumption of innocence unless and until proven otherwise in the course of the trial. Sometimes it seems overwhelming. Sometimes it is underwhelming with evidence. I don't know.
>
> I walked in this morning at 7:30. They hand me this file and said: This is your case. Have a good day. That's my knowledge of this case

today. So for the last time, I'll tell you again: The person on trial, Mr. Nguyen, is simply presumed to be innocent unless and until proven otherwise in this course of the trial.

The other challenged comment occurred near the end of voir dire, just before the parties exercised their peremptory strikes. We reproduce the trial court's full statements once more:

> All right, folks. We have eliminated several jurors by agreement. And now the lawyers have the option of eliminating 11 more jurors per side. And once they're through, they will turn their lists back to the clerk. We then compare both lists side by side. The first 14 jurors not eliminated are the 14 jurors on the case today. Here's a hint: If you're Juror 52 or higher, you're in pretty good shape. Sit tight back there. Yeah.
>
> You're thinking, if they're not going to use us, why did you drag us over here? That's a valid question. On tough cases, murderers, child sexual assaults, we'll bring over 65 to a hundred-plus jurors, especially when it comes to can you consider the full range of punishment on some of the sexually-related cases on children. It's a real tight wire to find people with the right state of mind with those kinds of cases. And rightfully so, I think. Good.

Appellant did not object to either of these statements, but he now argues that the trial court committed fundamental error, for which no objection is required, when the trial court made the comment about the Boston Marathon bomber and when the trial court stated that finding an impartial jury is "rightfully" difficult in tough murder cases. Appellant argues that these comments were inappropriate because they signaled to the jury that "patently guilty individuals still need jurors who are willing to give lip-service to the mere formality of the presumption of innocence." Appellant does not cite to any authority for this argument, even though that was his burden. *See* Tex. R. App. P. 38.1(i).

In any event, we do not perceive any error in the trial court's comments. The trial court repeatedly emphasized that appellant enjoyed the presumption of

innocence—"no ifs, ands, or buts." The trial court also emphasized that its understanding of the case was limited to the case file it had received that morning. The trial court did not signal that it was aware of any particular facts or video evidence like in the Boston Marathon bomber case, which might otherwise suggest a predetermination of appellant's guilt. Nor did the trial court signal that it would tolerate any juror who would give "lip-service" to the presumption of innocence.

In short, we reject appellant's arguments that the trial court committed fundamental error.

## VII.  CONCLUSION

The trial court's judgment is affirmed.


/s/ Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Wise and Jewell.
Publish — Tex. R. App. P. 47.2(b).